UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DOUGLAS ROBERTSON (#91333)

VERSUS

LA. STATE SUPREME COURT

CIVIL ACTION

NO. 09-1029-SDD-EWD

**RULING ON MOTION TO NULLIFY AND MOTION FOR CONTEMPT**[1]

Before the court are two related motions filed by *pro se* plaintiff, Douglas Robertson ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana. First, Plaintiff has filed a "Motion to Nullify 9 Years Old Alleged Debt, 'Prescription'; "Statute of Limitations; 'Laches'"[2] and a "Supplemental to Pending Motion to Nullify 9 Years Old Alleged Debt; Transfer Money Back to Drawing Account from Reserve Account"[3] (collectively, the "Motion to Nullify"). Second, Plaintiff has filed a Motion for Contempt of Court (the "Motion for Contempt").[4] Both Motions challenge the deduction of money from Plaintiff's prison banking account in order to make installment payments to pay the filing fee associated with the above captioned case. For the reasons set forth herein, both Motions[5] are DENIED.

**I.  Background**

On December 7, 2009, Plaintiff filed a "Petition for Writ of Mandamus Pursuant to 28 U.S.C. Subsection 1651(A) [and] 1406(A)" (the "Petition")[6] and a Motion to Proceed *In Forma*

---

[1] Because the basis for both motions, which have been referred to the undersigned, is essentially a request to reconsider the court's Order granting Plaintiff leave to proceed *in forma pauperis* (and requiring that the requisite filing fee be paid in installments), the undersigned proceeds in this matter under 28 U.S.C. § 636(A).

[2] R. Doc. 19.

[3] R. Doc. 20.

[4] R. Doc. 21.

[5] R. Docs. 19 & 21.

[6] R. Doc. 1.

1

*Pauperis*.[7]  Per the Petition, Plaintiff alleged that in July 2009, he filed an application for supervisory writs with the Louisiana Supreme Court, seeking review of issues related to his criminal conviction, and that despite seeking "expedited" review, his writ application remained pending.  Plaintiff therefore asked this Court to compel the Louisiana Supreme Court to expedite review of his application.

On December 21, 2009, Plaintiff was granted leave to procced *in forma pauperis* ("IFP"), pursuant to 28 U.S.C. § 1915.[8]  The Order granting IFP status (the "IFP Order") required Plaintiff to pay an initial partial filing fee of $11.49.[9]  The IFP Order further provided that following payment of the initial filing fee,

> the plaintiff shall pay $338.51, the remaining balance of the filing fee, in periodic installments.  The plaintiff is required to make payments of 20% of the preceding month's income credits to the plaintiff's account until the plaintiff has paid the total filing fee of $350.00.
>
> The agency having custody of the plaintiff shall collect this amount from the plaintiff's trust fund account or institutional equivalent, when funds are available and when permitted by 28 U.S.C. § 1915(b)(2), and shall forward same to the Clerk of Court for the Middle District of Louisiana when the amount collected exceeds $10.00.[10]

Following the IFP Order, the Magistrate Judge previously assigned to this matter issued a Report recommending that Plaintiff's suit be dismissed with prejudice as legally frivolous.[11]  Plaintiff

---

[7] R. Doc. 2.

[8] R. Doc. 5.

[9] The amount of the initial partial filing fee is 20% of the greater of the average monthly deposits or the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) & (B).  A review of the docket sheet indicates that an initial filing fee of $11.49 was paid on January 14, 2010.

[10] R. Doc. 5, pp. 1-2.

[11] R. Doc. 6, p. 4.  Per the Report, the Magistrate Judge explained that the court lacked subject matter jurisdiction over Plaintiff's claims and that "the mandamus authority of the federal courts does not extend to state officials, and this Court, therefore, is unable to grant the relief sought by the plaintiff."  R. Doc. 6, p. 3.

submitted multiple objections to that recommendation,[12] and the District Judge dismissed Plaintiff's action as frivolous within the meaning of 28 U.S.C. § 1915(e).[13] Plaintiff filed a Notice of Appeal on February 2, 2010[14] and on May 13, 2010, the Fifth Circuit Court of Appeals dismissed his appeal for failure to timely pay the docketing fee.[15]

It appears that nothing further occurred in this case until an installment payment (for purposes of paying the filing fee) was made in the amount of $60.00 on January 29, 2018.[16] Following that payment, Plaintiff filed the instant Motion to Nullify and Motion for Contempt.[17] In his Motion to Nullify, Plaintiff characterizes the "court debt" (*i.e.*, $350.00 the filing fee) as "stale" and asserts that an "unreasonable delay of 9 years has elapsed and any attempt now to collect is prohibited by the doctrine of laches as there was [sic] 9 years of opportunities to collect and to diligently notify petitioner of the alleged existence of the outstanding debt…."[18] Plaintiff further contends that the debt is prescribed[19] and "is disputed as having been paid many many years ago."[20] Plaintiff seeks an order from this Court "nullifying" the debt, returning "all monies…deducted from Petitioner's drawing account…immediately," and returning "all monies frozen in reserve account…"[21] Because the Motion to Nullify challenges the continued viability

---

[12] R. Docs. 7 & 8.

[13] R. Doc. 10.

[14] R. Doc. 12.

[15] R. Doc. 18.

[16] On June 18, 2018, an additional installment payment of $10.00 was recorded on the docket sheet. Because Plaintiff filed both Motions prior to the June 18, 2018 $10.00 installment payment, the undersigned assumes that Plaintiff intends to challenge all installment payments made.

[17] In the Motion to Nullify, Plaintiff appears to name as defendants "Offender Banking" and "La. State Penitentiary." R. Docs. 19 & 20.

[18] R. Doc. 19, pp. 1-2.

[19] R. Doc. 19, p. 2.

[20] R. Doc. 19, p. 2.

[21] R. Doc. 19, p. 3. In his related Motion for Contempt, Plaintiff asserts that Saundro Rosso, who is allegedly an employee of Offender Banking at Angola, should be held in contempt for deducting $60.00 from Plaintiff's drawing

3

of this Court's December 21, 2009 IFP Order and seeks to nullify the IFP Order, the undersigned considers Plaintiff's Motion to Nullify as a request for reconsideration of the IFP Order.[22]

## II. Law and Analysis

In 1995, Congress "placed several limitations on prisoner litigation in federal courts" through passage of the Prison Litigation Reform Act ("PLRA").[23] The purpose of these limitations "is to 'force prisoners to think twice about the case and not just file reflexively.'"[24] Among the limitations imposed by the PLRA, "Congress required prisoners qualified to proceed *in forma pauperis* nevertheless to pay an initial partial filing fee" and "[t]hereafter, to complete payment of the filing fee…in monthly installments…."[25]

28 U.S.C. § 1915(b)(1) provides that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner *shall* be required to pay the *full amount* of the filing fee."[26] "The fee provisions of the PLRA were designed to deter frivolous prisoner litigation in the courts 'by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by

---

account despite Plaintiff repeatedly advising Rosso that the "debt is prescribed by the statute of limitations." R. Doc. 21, p. 2.

[22] While "the Rules do not formally recognize the existence of motions for reconsideration," "courts customarily consider such motions under either Rule 60(b) or Rule 59(e)." *Kiper v. Ascension Parish School Board*, Civil Action No. 14-313, 2016 WL 204480, at * 2 (M.D. La. Jan. 15, 2016). Generally, reconsideration is granted if one of four circumstances is shown: (1) the court is presented with newly discovered evidence; (2) the court has committed clear error; (3) the initial decision was manifestly unjust; or (4) a change in controlling law justifies an order's modification. *Id*. A motion for reconsideration should not be used to raise arguments or evidence that could have been raised earlier. *Id*. at * 3. Here, Plaintiff contends that the lapse of time between entry of the IFP Order and deductions from his account render the IFP Order null. The court considers such argument to be similar to Plaintiff asserting that the continued enforcement of the IFP Order would be manifestly unjust.

[23] *Bruce v. Samuels*, 136 S.Ct. at 629 (2016).

[24] *Id*. at 631.

[25] *Bruce*, 123 S.Ct. at 629.

[26] Emphasis added. *See also*, *Pooler v. Cain*, Civil Action No. 10-462, 2010 WL 4386483, at * 1 (M.D. La. Sept. 20, 2010) ("In accordance with 28 U.S.C. § 1915, all prisoners granted in forma pauperis status are required to pay the full amount of the Court's filing fee."); *Hubbard v. Haley*, 262 F.3d 1194, 1196 (11th Cir. 2001) (explaining that "§ 1915(b) now requires that the prisoner pay an initial partial filing fee and complete the payment of the filing fee in accordance with the payment schedule set forth in § 1915(b)(2)" and noting that "the intent of Congress in promulgating the PLRA was to curtail abusive prisoner tort, civil rights and conditions of confinement litigations.") (collecting cases).

4

liability for filing fees.'"[27] "[T]he obligation of a filing fee attaches at the time of filing and the obligation remains despite the disposition of the case."[28] "No relief from an order directing payment of the filing fee should be granted for a voluntary dismissal,"[29] nor when a prisoner's complaint is dismissed as frivolous.[30] As one district court has explained,

> Congress did not draft any exceptions to this requirement [of paying the entire filing fee]. Indeed, there is nothing in the language of § 1915(b)(1) suggesting that any prisoner under any circumstance is exempt from paying the full filing fee, nor is there anything in the language of the statute providing this court with the authority to exempt a prisoner from paying the full amount due. The absence of such "exempting" language makes logical sense in light of the statute's purpose which, again, is to stymy the proliferation of prisoner litigation by generating an economic incentive to only file those suits that the prisoner truly believes have merit. Accordingly then, regardless of a prisoner's particular situation, he is always fully responsible for (eventually) paying the entire filing fee for a suit he chose to institute in federal court.[31]

Based on the docket sheet for this suit, the initial filing fee was deducted from Plaintiff's account on January 14, 2010, and no further deduction occurred until January 29, 2018, a little more than eight years later. While the undersigned agrees with Plaintiff that a large amount of time elapsed between the two deductions, Plaintiff has presented the court with no evidence that at any time prior to January 29, 2018 an installment payment *could* have been made. Under the

---

[27] *Jackson v. Stinnett*, 102 F.3d 132, 136-137 (5th Cir. 1996).

[28] *Johnson v. Rhodes*, 220 F.3d 587, at * 1 (5th Cir. June 14, 2000) (unpublished).

[29] *Hatchet v. Nettles*, 201 F.3d 651, 654 (5th Cir. 2000).

[30] *See*, *e.g.*, *Johnson*, 220 F.3d 587.

[31] *Ippolito v. Buss*, 293 F.Supp.2d 881, 883 (N.D. Ind. 2003). The *Ippolito* court went on to deny a prisoner's request that payment of the full filing fee be deferred until he was released, reasoning that "deferring the required payments until after a prisoner has been released would destroy the purpose of the statute—the potentially constraining force of immediate liability would be lost. Filing a frivolous lawsuit becomes much easier to do if the repercussions for doing so appear far in the future, if at all. Moreover, ensuring payment of the full amount of filing fees is much easier while a prisoner is in custody and has a prisoner's trust account, it is not so simple once a prisoner has been released." *Id.* *See also*, *Stubbs v. Ohio Dept. of Rehabilitation & Corrections*, Case No. 17-813, 2018 WL 3218703, at * 1 (S.D. Ohio July 2, 2018) ("The "PLRA contains no language suggesting that the courts have authority or any discretion to allow prisoners to depart or deviate from the payment schedule explicitly set out in the statutory provision.").

PLRA, "no monthly installments are required *unless* the prisoner has more than $10 in his account…."[32] Accordingly, incremental payments are premised on the accumulation of more than $10.00 in Plaintiff's account.

Plaintiff cites to Louisiana Civil Code article 3447 – the general civil code article providing that under Louisiana law, "[l]iberative prescription is a mode of barring of actions as a result of inaction for a period of time." Even assuming a Louisiana prescriptive period applies here, the potentially applicable provision similarly includes a requirement that "prescription commences to run from the day payment is exigible."[33] Comments to this article note that "liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible" and that "[i]t cannot commence sooner, because the time given for prescription should be a time during which the action can be exercised, and one cannot reproach the creditor for not having acted at a time when he did not have the right to do so."[34] Just as it is not clear that the statutory condition set forth in 28 U.S.C. § 1915(b)(2) was ever met, it is not clear that any installments were ever exigible prior to the January 29, 2018 payment.[35]

---

[32] *Bruce*, 123 S.Ct. at 629 (citing 28 U.S.C. § 1915(b)(2)).

[33] La. CC art. 3495. Although not cited by Plaintiff in either his Motion to Nullify or his Motion for Contempt, the undersigned notes that La. CC art. 3494 provides a three year prescriptive period for: "(1) an action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board."

[34] La. CC art. 3495, 1983 Revision Comments, cmt. (b). *See also*, *Doan v. Technical Engineering Consultants, Inc.*, 942 So.2d 1145, 1146 (La. App. 5 Cir. 2006) ("Black's Law Dictionary defines an 'exigible' debt as a liquidated and demandable debt; a mature claim.").

[35] In his supplement to the Motion to Nullify, as well as in his Motion for Contempt, Plaintiff refers to an unpublished case from the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. Plaintiff asserts that "the La. State 19th Judicial District Court in *Navarre vs. La. Dept. of Corrections*, Case #C646040 Sec: 27 September 13, 2017, granted writs declaring collection of a 7 years old debt prescribed …." R. Doc. 20, p. 1. *See also*, R. Doc. 21, p. 2 ("The La. State 19th Judicial District Court in Navarre…ordered Ms. Rosso at Offender Banking to return unto 'Navarre', 'supra' all monies she had deducted from his drawing account because of an alleged 7 years old debt he supposedly owed, ruling that the statute of limitations had expired upon collection of said 7 years old debt."). Plaintiff did not provide this Court with a copy of the ruling, nor does he provide any additional information regarding the facts of that case. However, a one-page judgment, dated September 13, 2017, obtained by the court states that the state court judge adopts "the Commissioner's Report," and rules that "[t]he department should discharge the debt as it stood when the petitioner was discharged to parole, in 2008, and any funds collected on that debt should be either returned to the petitioner or attributed to any debt incurred upon his return to incarcerated status in July of 2015." Electronic

Finally, although Plaintiff relies on two cases related to the equitable doctrine of laches, those cases involve delays much more significant than the one at issue here, as well as concerns regarding deceased parties and lost records.[36] Such cases do not support Plaintiff's position that the time delay here should provide an equitable basis for extinguishing the federally mandated statutory requirement of paying the full filing fee under 28 U.S.C. § 1915(b), especially in light of the clear Congressional policy discussed herein. "Whether laches bars an action in a given case depends upon the circumstances of that case…."[37] Here, in light of the clear policies behind the PLRA's requirement that Plaintiff pay the entire filing fee (albeit over a period of time), the undersigned finds that Plaintiff has not established the applicability of the equitable doctrine of laches.

"The party pleading prescription has the burden of proving that the claim has prescribed."[38] Here, Plaintiff has not met his burden of proving that the obligation to pay the full filing fee is

---

docketing for the *Navarre* case does not include an image of either the Commissioner's Report or the factual basis for the Petition. In any event, *Navarre* was a state court proceeding and does not appear to have involved federally mandated payments of the filing fee under 28 U.S.C. § 1915.

[36] *Davidson v. Grady*, 105 F.2d 405 (5th Cir. 1939) (remanding to dismiss plaintiffs' suit based on laches where plaintiffs sought to rescind a 30-year-old family settlement and explaining that most of the parties to the settlement were dead, and no action had been taken for more than thirty years despite the fact that plaintiffs were in a position during that time to confirm the suspected fraud and did not do so); *Bell v. Mackey*, 191 S.C. 105 (S.C. 1939) (finding doctrine of laches precluded plaintiff's suit to recover sum allegedly unaccounted for by the administrator of a succession where, *inter alia*, individual who had been the administrator was deceased more than 19 years prior to institution of the action, judge who had presided over probate proceedings had died 17 years prior to institution of the action, and the entire record of the probate court had been lost or misplaced.). To the extent *Bell* (a 1939 South Carolina Supreme Court case) is even applicable, the undersigned notes that the *Bell* court engaged in an extensive discussion of latches and stale claims, and found that "the three necessary essentials: (a) lapse of time; (b) inaction and negligence, and (c) opportunity to have proceeded sooner" were satisfied. *Bell*, 191 S.C. at 830. Here, assuming *arguendo* that the eight year delay should be considered similar to the much more lengthy delays in *Davidson* or *Bell*, and that similar issues regarding deceased parties and lost records could be established, as noted above, Plaintiff has not shown any negligence or "opportunity to have proceeded sooner" exists here.

[37] *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980) (setting forth the three criteria that must be met to invoke latches as "(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted."). *See also*, *Atchafalaya Basinkeeper v. Bostick*, Civil Action No. 14-649, 2015 WL 3824318, at * 8 (E.D. La. June 19, 2015) (same). Plaintiff has also not established that the delay in deducting funds from his account would satisfy these three criteria.

[38] *Cooper v. Louisiana Dept. of Public Works*, 870 So.2d 315, 324 (La. App. 3 Cir. 2004) (citing *Pearson v. Hartford Accident & Indemnity Co.*, 281 So.2d 724 (La. 1973)); *Cooper v. Melancon*, Civil Action No. 05-277, 2007 WL

time-barred, either under rules of prescription or the doctrine of laches. In light of the PLRA's "statutory objective of containing prisoner litigation,"[39] and without any evidentiary basis or controlling case law, there is no basis to conclude that Plaintiff's obligation to pay the filing fee for this suit has been extinguished.[40] Accordingly, the undersigned DENIES Plaintiff's Motion to Nullify.[41] Because Plaintiff's Motion for Contempt is premised on a finding that Ms. Rosso's drawing from Plaintiff's prisoner account was improper because the underlying debt (*i.e.*, the obligation to pay the full filing fee) has been extinguished, the undersigned likewise DENIES the Motion for Contempt.[42]

### III. Conclusion

For the reasons set forth herein, the "Motion to Nullify 9 Years Old Alleged Debt, 'Prescription'; "Statute of Limitations; 'Laches'"[43] and Motion for Contempt of Court[44] are **DENIED**.

Signed in Baton Rouge, Louisiana, on August 17, 2018.

*[signature]*
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

9711056, at * 4 (M.D. La. Aug. 13, 2007) ("The party pleading prescription has the burden of proving that prescription has accrued, unless prescription is evident from the face of the pleadings.").

[39] *Bruce*, 136 S.Ct. at 633.

[40] To the extent Plaintiff also asserts that "the claimed debt of $350.00 is disputed as having been paid many many years ago," R. Doc. 19, p. 2, there is likewise no support in the record for that assertion.

[41] R. Doc. 19.

[42] R. Doc. 21.

[43] R. Doc. 19.

[44] R. Doc. 21.